[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13240

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BARRY KIYA DAISE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:21-cr-00007-WLS-TQL-1

_____

Before LUCK, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Barry Daise was convicted of possessing with intent to distribute cocaine and maintaining a drug premises. He was sentenced as a career offender to 240 months in prison, followed by three years of supervised release. Daise now appeals his conviction, arguing that the government presented extrinsic evidence without pretrial notice, as required by Federal Rule of Evidence 404(b). And Daise also appeals his sentence, arguing his earlier Georgia cocaine convictions were not controlled substance offenses so as to qualify him as a career offender under the sentencing guidelines. For the reasons explained below, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

From early 2018 to mid-2019, Daise and William Smith trafficked cocaine, marijuana, and flakka (a psychostimulant drug). Their relationship started with Daise buying cocaine from Smith. Because Daise had strong connections in South Georgia, the relationship evolved and Daise began selling drugs for Smith. Smith supplied cocaine at his own cost, Daise sold the cocaine, and they split the profits. Daise also got Smith involved in dealing flakka with the same supply-sell relationship. The men also converted powder cocaine to crack cocaine and made flakka in Daise's kitchen. But their joint drug operation ended when, on August 27, 2019, Smith was arrested and became an informant for the police.

The information Smith provided led the police to Daise's apartment. Daise was on probation at the time but never provided probation with the apartment address, which was registered to Dexter Bivens. Police surveilled Daise for several months as Daise would come and go from this apartment. Cell phone global-positioning-system coordinates placed Daise at the apartment over 6,300 times during the 90-day period in which he was surveilled, while Bivens was never seen at the apartment.

After three months of surveillance, the police secured a search warrant for the apartment and found, among other things, 48 grams of cocaine, a camping cup used to cook crack cocaine, packages of one-gram plastic bags, two digital scales containing cocaine residue, five identification cards, liquid dish soap, and headache powder. They also found text messages on Daise's phone discussing selling and cooking cocaine, along with pictures of cocaine and cash.

Based on this evidence, Daise was indicted for possessing with intent to distribute cocaine and maintaining a drug premises. Smith testified at the trial. Specifically, Smith testified about his and Daise's drug dealing, which began in 2018, explaining that Daise would sell cocaine and sometimes flakka for him because Daise knew buyers in the area. Smith also testified that the dish soap found in the apartment was used to cook crack cocaine and the headache powder was used to make flakka. Daise objected to the relevance of the flakka testimony to the charged offenses, and

the district court responded by giving a limiting instruction to the jury.

At the end of the government's case, Daise moved to dismiss the indictment with prejudice. He argued the jury was tainted by the flakka testimony, which was extrinsic evidence for which the government did not provide proper rule 404(b) pretrial notice. After the jury found Daise guilty of the charges, the district court denied the dismissal motion, finding the government did not provide the required notice but that the flakka testimony did not prejudice Daise because the government had provided him with Smith's interview earlier in discovery.

For sentencing, the probation office determined Daise was a career offender based on two earlier Georgia controlled substance offenses involving cocaine. *See* U.S.S.G. § 4B1.1(a), (b)(3). This raised his total offense level from 16 to 32, and his guideline range from 46-to-57-months' imprisonment to 210-to-262-months' imprisonment. Daise objected to his career-offender status, arguing his Georgia cocaine convictions were not controlled substance offenses under the guidelines. The district court overruled the objection and sentenced him as a career offender to 240 months in prison, followed by three years of supervised release.

## STANDARD OF REVIEW

We review for abuse of discretion a district court's admission of evidence under rule 404(b). *See United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015). We may affirm evidentiary rulings "for any reason supported by the record," even if not relied on by

the district court. *United States v. Barsoum*, 763 F.3d 1321, 1338 (11th Cir. 2014). And we review de novo whether an earlier conviction qualifies as a "controlled substance offense" under the sentencing guidelines. *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019).

## DISCUSSION

Daise raises two issues on appeal. First, he contends that the district court abused its discretion in admitting the flakka testimony. Second, he argues that the district court erred in counting his earlier Georgia cocaine convictions as controlled substance offenses to trigger the career offender guideline. We address each in turn.

### *The Flakka Testimony Was Admissible*

First, Daise argues the flakka testimony was inadmissible extrinsic evidence because the government failed to provide pretrial notice and because the testimony did not go to any permissible purpose. We are unpersuaded because the flakka testimony was intrinsic evidence to the charged cocaine offenses and therefore not subject to rule 404(b).

Under rule 404(b)(1), evidence that a defendant committed crimes other than the charged offenses is not admissible for a criminal propensity inference, but it is admissible for other purposes such as intent or motive. Fed. R. Evid. 404(b)(1). To offer such evidence at trial, the government must typically provide the defendant with pretrial notice in writing with the permitted purpose

of the evidence and reasoning that supports the purpose. *Id.* R. 404(b)(3)(A)–(C). But evidence is intrinsic and not subject to rule 404(b) if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Estrada*, 969 F.3d 1245, 1274 (11th Cir. 2020) (quoting *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). "Evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

Smith's flakka testimony was intrinsic evidence to the cocaine offenses as the flakka and cocaine evidence were inextricably intertwined, and the drug trafficking operations were part of the same series of transactions. The items to make flakka were found together with the items to make crack cocaine. Smith first brought up flakka when asked about the significance of the dish soap and headache powder. He explained the dish soap was used to cook crack cocaine. And when asked if the headache powder was used to cut the cocaine, he stated it was to make other narcotics. Smith's testimony—explaining what items were used for cocaine and what wasn't in the apartment Daise maintained as a drug premises—was an "integral and natural part" of Smith's account of the circumstances surrounding the charged drug offenses. *Estrada*, 969 F.3d at 1274 (quoting *Foster*, 889 F.2d at 1053).

Further, the flakka and cocaine evidence arose out of the same series of transactions as the supply-deal relationship between Daise and Smith. Indeed, Smith testified about a flakka buyer when explaining Smith and Daise's relationship. Smith testified that he would pay for and supply the drugs, Daise would sell the drugs because he knew "who to deal with and who not to deal with," and they would split the profits. Smith then testified about one of Daise's "connections" that would regularly buy flakka. "[E]vidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same modus operandi as the charged offenses is admissible as intrinsic evidence outside the scope of [r]ule 404(b)." *See United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015)

Finally, even if the district court did abuse its discretion in admitting the flakka testimony, the error was harmless. A nonconstitutional evidentiary error is subject to harmless error review. *United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010). That is, "[r]eversal is warranted only if the error resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (cleaned up). Daise has not shown the error resulted in actual prejudice.

First, there was substantial evidence incriminating Daise, including: cocaine, items to cook crack cocaine, and items used to sell cocaine found in Daise's apartment; GPS coordinates placing Daise in the apartment about 6,300 times; and text messages and photographs reflecting his drug deals. Second, Smith's testimony

about his and Daise's drug operations—even without the flakka testimony—was significant evidence of Daise's involvement in the drug distribution network. And third, the district court provided a limiting instruction to the jury directing them to consider the flakka testimony not as substantive evidence, but only "to prove motive, knowledge, intent or lack of mistake," which mitigated any prejudice to Daise. *See Edouard*, 485 F.3d at 1346 ("[A]ny unfair prejudice possibly caused by admitting evidence of Edouard's prior smuggling activities was mitigated by the district court's limiting instruction to the jury.").

*The Georgia Cocaine Convictions Are Controlled Substance Offenses for Sentencing as a Career Offender*

Next, Daise argues his earlier Georgia cocaine convictions are not predicate controlled substance offenses so as to qualify him as a career offender. He contends that because Georgia defined cocaine more broadly than the federal government—to include "conformational isomers" of cocaine and not just "optical and geometric isomers"—Georgia's broader state drug statute does not qualify as a controlled substance offense under the career offender guideline. We disagree.

In determining whether a drug offense is a predicate "controlled substance offense," "state law defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law." *United States v. Dubois*, 94 F.4th 1284, 1296 (11th Cir. 2024) (emphasis omitted), *cert. granted, judgment vacated*, 145 S. Ct. 1041 (2025), *reinstated by* 139 F.4th 887 (11th Cir. 2025). And "'controlled

substance' means a substance regulated by state law when the defendant was convicted of the state drug offense." *Id.* at 1298 (citation omitted).  We apply a categorical approach, meaning that "[u]nless the least culpable conduct prohibited under the state law qualifies as a predicate controlled substance offense, the defendant's state conviction cannot be the basis of an enhancement under the guidelines, regardless of the actual conduct underlying the conviction." *Id.* at 1295 (cleaned up).

Daise was convicted of possessing cocaine in 2003, and of possessing cocaine with the intent to distribute in 2006, in violation of Georgia Code section 16-13-30(b).  Under Georgia law, "a drug is a controlled substance . . . only if it is listed as such in both Georgia *and* federal schedules."  *See C.W. v. Dep't Hum. Servs.*, 836 S.E. 2d 836, 837 (Ga. Ct. App. 2019) (finding that "under the plain language of the statute" a drug is a "controlled substance" only "if it is listed as such in both Georgia *and* federal schedules"); Ga. Code Ann. § 16-13-21(4).

Thus, because under Georgia law a controlled substance must appear on both state and federal drug schedules, Daise could not have been convicted of selling or possessing with intent to distribute conformational isomers of cocaine.  Because conformational isomers, under Daise's theory, are not included on the federal drug schedules, they categorically would not qualify as "controlled substances" under Georgia law.  So conformational isomers could not sustain a conviction for "sell[ing] or possess[ing] with intent to distribute any controlled substance."  *See* Ga. Code Ann.

§ 16-13-30(b); *cf. also C.W.*, 836 S.E.2d at 837 (finding marijuana did not qualify as a controlled substance because it was on the federal drug schedule but not the Georgia drug schedule).  For that reason, the district court did not err in using his earlier Georgia cocaine convictions to classify Daise as a career offender under the sentencing guidelines.

**AFFIRMED.**